DISTRICT OF RHODE ISLAND

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA )
)
v. ) CR. No: 05-080T
)
JOHN A. CELONA )

**THE GOVERNMENT'S AMENDED RESPONSE TO PRE-SENTENCE REPORT**

## I. INTRODUCTION

The Government has received and reviewed the Presentence Report ("PSR") for the sentencing of defendant, John A. Celona ("Celona") and notes some necessary corrections. One error results in a significantly higher guideline offense level than actually applies. Examination of this issue will also cause the Court to focus on the proper computation of "loss" to determine Celona's offense level. Finally the PSR overlooks a potential grounds for departure.

## II. DISCUSSION

### A. An additional specific offense characteristic was improperly added to the calculation of the guideline offense level.

Celona's offense level is properly calculated under U.S.S.G. § 2C1.7. That guideline provides, in pertinent part:

> **Fraud Involving Deprivation of the Intangible Right to the Honest Services of Public Officials; Conspiracy to Defraud by Interference with Governmental Functions**
>
> (a) Base Offense Level: 10
>
> (b) Specific Offense Characteristic

*(1) (If more than one applies, use the greater):*

(A) If the loss to the government, or the value of anything obtained or to be obtained by a public official or others acting with a public official, whichever is greater (i) exceeded $2,000 but did not exceed $5,000, increase by 1 level; or (ii) exceeded $5,000, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

(B) If the offense involved an elected official or any official holding a high-level decision making position, increase by 8 levels. (emphasis added)

The PSR calculates the offense category starting with a base offense level of 10, adds 12 points as a specific offense characteristic for the amount of loss, and then adds an additional 8 level increase because Celona was an elected official to arrive at a total offense level of 30.[1]

The calculation is in error because the applicable guideline parenthetically states that, "If more than one [specific offense characteristic] applies, use the greater." Therefore, the Court should only apply a 12 point enhancement under Subsection (A) based on the amount of loss because that enhancement exceeds the 8 levels provided in Subsection (B) due to Celona's status as an elected official. The current calculation is therefore 8 levels greater than it should be since the calculation inappropriately enhanced the total offense level by both of these specific offense characteristics when only the greater should have applied.[2] Applying a three level reduction for

---

[1] The guideline range was calculated pursuant to the United States Sentencing Guidelines which were effective November 5, 2003. At paragraph 5 of the PSR, there is a typographical error indicating that the guidelines in effect on November 5, 1993 were used.

[2] The plea agreement at paragraph 4 provided stipulations to both of the offense characteristics. Although the United States and Celona stipulated to facts supporting both enhancements in an effort to avoid any possible sentencing issues, that should not be construed

acceptance of responsibility, the adjusted offense level should therefore total 19. Offense Level 19/Criminal History Category I provides for a range of imprisonment of 30-37 months.

**B. Loss Computation**

Celona defrauded the citizens of the State of Rhode Island of his honest services as a State Senator and as Chairman of the Senate Corporations Committee. While holding those official positions, Celona participated in three fraudulent schemes involving five corporations and a number corporate executives. Celona unlawfully enriched himself by obtaining money and gifts while intentionally using his public authority and influence to benefit the corporations who were giving him pay-offs. He deceived the citizens of Rhode Island by not fully disclosing his financial relationships with the corporations. In exchange for his dishonest services Celona received payments of approximately $319,203.63 as well as gifts of meals, entertainment, lodging, golf outings and travel.

The corporations, however, intended to benefit by millions of dollars. Thus far, one corporation and two of its executives have been prosecuted. The corporation, a non-profit hospital, entered into a deferred prosecution agreement. Both its executives were convicted after trial and await sentencing. Future prosecutions, in related cases, of other corporations and their executives are anticipated. Since the specific offense characteristic ultimately applicable to sentencing in Celona's case is determined by the amount of loss calculated from the table found at Section 2B1.1 the United States provides this analysis of the computational issues that might effect this case but are sure to be present in related prosecutions.

---

as an agreement that both would actually apply. The parties stipulated to facts potentially effecting any guideline provisions that might ultimately apply at sentencing.

The United States and Celona stipulated that the "value of the payments" made to Celona in Counts 1 through 3 of the Indictment totaled $319,203.63. The "value of the payments" is not necessarily synonymous with "loss" as that term is used in the Sentencing Guidelines.

Under U.S.S.G. § 2C1.7, the Court is directed to calculate the, "loss to the government, or the value of anything obtained or to be obtained by a public official or others acting with a public official, whichever is greater." For losses exceeding $5,000 the Court is directed to compute the amount using the table found at § 2B1.1. Under U.S.S.G. § 2B1.1, Application Note 3, losses are to be determined as the greater of the actual or intended loss. Loss is determined on the basis of the pecuniary harm reasonably foreseeable or intended. Pecuniary harm means harm that is monetary or otherwise readily measurable in money.

Celona's intent was to benefit himself at the expense of others. He benefitted by obtaining over $300,000 from three corporations, Roger Williams Medical Center ("RWMC"), CVS Incorporated ("CVS"), and Blue Cross Blue Shield of Rhode Island ("BCBS"). Those corporations and their executives also intended to benefit from this illicit affair. While exact figures are still being investigated, the benefits to the corporations are estimated in amounts totaling millions of dollars.

It is Celona's honest services to the public which was purloined by the corporations. The term "loss" would not typically apply to the amount of money paid to Celona but to the value of the harm caused by his dishonesty. The loss in this case, as in any dishonest services case, is to the public confidence in their government. That loss cannot be quantified in dollars and cents. Arguably, since these three corporations intended to benefit, by millions of dollars, either their competitors or the consuming public would have lost. That loss, although theoretically

measurable in money, cannot be readily determined.

Application Note 3 to § 2B1.1 further provides that the "gain" that resulted from an offense should be used by the Court as an alternative measure of loss, but only if the loss cannot be reasonably determined. That is also consistent with § 2C1.7 which directs the Court to look first to the loss to the government and then to the greater of the value of anything to be obtained by the public official or others acting with the public official. In Celona's case, the plea agreement only assigns the value of the payments made to Celona on each of the counts. It does not provide that those payments are the "loss" as that term is used in the guidelines. Since the loss is intangible or cannot reasonably be determined, it seems fair and just that Celona's offense level would be calculated using the amount of gain that Celona intended for himself. That is, the amount of money that Celona obtained is an appropriate measure of the magnitude of his crime.

However, the Court must be cognizant that this is only an alternative measure of the harm caused by this offense and the magnitude of the intended harm can be measured differently for the different participants in these schemes. For example, trial testimony, confirmed by the verdict, established that Celona was unlawfully involved in contract negotiations on behalf of RWMC at the request of convicted defendant, Robert Urciouli. In one instance, Urciouli improperly and unlawfully involved Celona in those negotiations intending to obtain $8 million from BCBS. The result of the negotiations was the actual payment of an additional $3.5 million to RWMC. To measure Urciouli's crime it is not sufficient to look at the amount of money he paid to Celona. It is not necessary to determine how effective or necessary Celona was to achieving that result. Urciouli knowingly and intentionally involved Celona in the negotiations intending that RWMC would obtain $ 8 million by utilizing Celona's corrupt services. And,

that was only one of the dishonest acts that Celona performed for Urciouli.

Another of the dishonest services, to which Celona admitted, was to change his position on Any Willing Provider or Pharmacy Freedom of Choice legislation. While Celona initially supported and even sponsored that legislation, after being hired by CVS, Celona worked to defeat those bills. [redacted]

Therefore, while the $319,203.63 figure may be an appropriate measure of the sentence to be applied in Celona's case, the Court should be aware that this is an alternative measurement. Furthermore, as it relates to the sentencing of any corporations and corporate executives the "loss," alternatively measured by "gain," is not the value of the payments to Celona but rather the value of the "gain" that was intended by the corporations and their executives.

C. **Grounds that justify departure.**

The PSR at paragraph 63 reports that "The probation officer is not aware of any factors concerning the offense or the offender that should warrant a departure from the prescribed guidelines." Application Note 5 to the applicable guideline provides, "Where the Court finds that the defendant's conduct was part of a systematic or pervasive corruption of a governmental function, process, or office that may cause loss of public confidence in government, an upward departure may be warranted." Given the public reaction to this case, and to related cases, that

invited departure at least linguistically applies to this case.[3] The United States is not seeking a departure, merely correcting an apparent oversight in the PSR, as is its duty to the Court.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ GERARD B. SULLIVAN
GERARD B. SULLIVAN
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax

**CERTIFICATE OF E-FILING**

I hereby certify that on this 25TH day of October, 2006, I caused the United States Amended Response to the Presentence Report of John A. Celona to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

William C. DiMitri, Esq.
462 Broadway
Providence, RI 02909

/s/ GERARD B. SULLIVAN
GERARD B. SULLIVAN

---

[3] The PSR at paragraph 7 reflects that there are no known related cases. This case is related to United States v. Roger Williams Medical Center, Robert Urciuoli, Frances Driscoll and Peter Sangermano, CR. No: 06-02T. It is anticipated that there may be future related prosecutions as well.