UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| -vs- | : | CR 05-80T |
| | : | |
| JOHN A. CELONA | : | |

**SENTENCING MEMORANDUM**

The defendant, JOHN CELONA, is presently to be sentenced before this Honorable Court on January 31, 2007.

At this time and per the guideline calculations by United States Probation, the defendant is at an offense Level 19 with a Criminal History Category 1 which provides for a sentencing range of 30-37 months.

This guideline calculation does not, of course, factor in an anticipated motion by the government pursuant to U.S.S.G. § 5K1.1 for substantial assistance to the government in the investigation and/or prosecution of other individuals.

There potentially remains two issues raised by the government in its response to the Presentence Investigation Report.

1) Loss Computation

At the time the defendant agreed to be charged by way of information and at the time the defendant signed his plea agreement, the parties were in total and complete agreement that the benefit to Celona was $319,203.63.

This figure represents the amount of money received by Celona from the businesses by which he was employed during the relevant time period.

As the court is aware, Celona was employed as a consultant and received these sums from Roger Williams Medical Center, CVS and Blue Cross Blue Shield of RI.

Generally speaking and without revisiting the specific allegations contained in the indictments, Celona pleaded guilty to "selling his office." In effect, during the relevant time period, he modified his position on certain legislation or submitted legislation, or failed to act on certain legislation that would have benefited or been detrimental to these corporations.

This offense conduct potentially generated according to the government, savings or potential profits for these companies into the millions of dollars.

The government, however, apparently agrees (with the defendant) that Celona's intent was to benefit himself. This he does not deny, he was basically unemployed following the closing of the family business and using his "political connections" sought and/or accepted employment with these various corporations. The "mistake" he made was acting in their behalf when it came to certain legislation.

The ultimate monetary "benefit" to Celona was the $319,000.00 more or less, he received in salary over a six (6) year span. <u>His</u> ultimate loss as a result of his less than ethical conduct is incalculable.

The loss to the citizenry the government opines, is the loss of public confidence in their government. While that is a difficult concept to argue against, it is a concept or a loss that reasonably cannot be determined. It is not a loss that the court can reasonably estimate or assess in terms of money, and unfortunately, it is an affect of public corruption everywhere – not "only in Rhode Island" as the detractors of everything political would say.

Celona is in no position to reasonably and with any merit argue what the potential profits to these corporations would have been had everything gone as planned. Rather, he is in a position only to know what his "gain" was in taking part in this illicit activity, and as indicated, that gain over a six (6) year period was $319,000.00.

As the government correctly asserts in its response to the Presentence Report, it is the "gain" that resulted from the offense that should be used in calculating the guideline levels of the loss cannot reasonably be determined.

The defendant agrees with this proposition and asserts that there is no monetary loss that can reasonably be determined, theoretically or otherwise, and therefore the proper method for determining the offense level is to calculate the gain to this defendant.

2) Grounds that Justify Departure

The government further opines that although it is not seeking a departure, it was compelled to reference Application Note 5 of guideline section 2C1.7 which reads as follows: "Where the court finds that the defendant's conduct was part of a systematic or pervasive corruption of a governmental function, process, or office that may cause loss of public confidence in government, an upward departure may be warranted."

The same application note then refers the reader to "Chapter Five, Part K."

U.S.S.G. § 5K2.7 Disruption of Governmental Function in pertinent part reads as follows:

> "If the defendant's conduct resulted in a significant disruption of a government function, the court may increase the sentence . . . Departure from the guidelines ordinarily would not be justified when the offense of conviction is an offense such as bribery or obstruction of justice; in such cases interference with governmental function is inherent in the offense, and unless the circumstances are unusual, the guidelines will reflect the appropriate punishment . . ."

There is nothing in the record or even outside the record to suggest anything "unusual" about the circumstances surrounding this case. The facts surrounding this offense conduct amount to "nothing more" than a simple bribery scheme . . . the only difference being that it was completed with checks instead cash being delivered by a "bag man."

In the scheme of things when one considers the multitude of bills being submitted in the legislature on a yearly basis, the offense conduct here was anything but systematic or pervasive. Rather, it could be considered insubstantial if not nominal in quantity.

The defendant, John Celona, respectfully contends that there is no legal or factual basis for the court to consider an upward departure based on Application Note 5 of Section 2C1.7.

3) Appropriate Sentence

The defendant, John Celona, pleaded guilty to three (3) counts of conspiracy to "deprive the citizens of his honest services."

From the very early stages of the investigation Celona has cooperated with the government and made himself available time and again for purposes of interviews or "debriefings." This was true even months before a plea agreement was ultimately executed – during which time the government had not even yet committed to any type of "cooperation" agreement - or any plea agreement at all.

Ultimately, a plea agreement was signed and the defendant entered a plea before this court and took full responsibility for his conduct in these offenses. In addition to fully accepting responsibility for his conduct in this court, he has admitted and taken full responsibility for the ethics charges brought by the Rhode Island Ethics Commission.

The amended Presentence Report after factoring in the defendant's credit for acceptance of responsibility, places the defendant in a guideline range of 19, Criminal History Category 1.

The defendant accepts that level as accurate and has filed no objection to that determination.

Although sentencing courts had discretion to move up or down from the determined guideline level in the past, post Booker, the courts have more discretion in varying from the guideline determinations and are free to impose what the court determines, is a fair and reasonable sentence.

The factors which the court is required to consider are (still) set out in 18 USC 3553(a) and as the court well knows, include:

1) the nature and circumstances of the offense and the history and characteristics of the defendant;
2) the need for the sentence imposed:
   - A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;
   - B) to afford adequate deterrence to criminal conduct;
   - C) to protect the public from further crimes of the defendant; and
   - D) to provide the defendant with needed education . . . training. . .

The Offense: It is not necessary to again go into great detail about the nature and circumstances of the offense. It is well established through his debriefings, his grand jury and trial testimony that John Celona took employment with various corporations while he was a State Senator for Rhode Island. It is further established that upon or shortly after accepting that employment that he set out to do the bidding for these corporations at the legislature.

Celona's conduct was wrong, unjustifiable and he makes no excuses for abandoning his previously held lofty ideals in return for a job.

In the past and throughout John Celona's life and political career, he was a well liked and respected Councilman and Senator who put the needs and well being of the citizens of Rhode Island before anything else. He had no sordid history but was rather, a businessman involved with his family, devoted to his wife, Karleen and their sons, John, Jr. and Christopher.

Celona was raised and lived his entire life in the Town of North Providence. He spent his formative years at the town's schools and working at his father's service station. In addition to working for his father, he also worked for his cousin at Luca's Music.

In high school he was a member of the Model Legislature and by his second year at Providence College made his first run for public office in North Providence. Although he lost that election he came back two years later and defeated the incumbent in 1974.

By 1975 he was employed full time at Celona Inc., Power Equipment & Sports Center. He ran that business until the doors closed for good in 1998.

He served the North Providence Town Council honorably from 1974 to 1993 while running the family business.

Eventually he was elected State Senator in 1995 and despite his reasons for being here, did his best for the State of Rhode Island and its citizens – including passing The Comprehensive Fire Safety Act of 2003 – which followed the tragedy known as "The Station Fire."

In addition, Celona was always civic minded. He was a Trustee at St. Anthony Church in North Providence from 1998 until his resignation in 2005; he co-chaired the St.

Anthony Food Ministry Golf Tournament (a charity event) in 2001-2004 inclusive; he was Chairman of the Building and Fundraising Committee for the St. Anthony Parish Center from 1988-1991 – the year the center was completed; he assisted the parish in two separate embezzlement investigations – both of which resulted in the arrest and conviction of the suspects.

In addition to the church, Celona was a member of the Lions Club, the Knights of Columbus, President of the North Providence Fraternal Order of Police Associates for 10 years and as such initiated a scholarship for those students interested in law enforcement or law as a career.

He was also a member of the Board of Directors of the Rhode Island Association for Cardiac Children.

Celona has been married since 1993 and remains devoted to his wife and sons and they, of course, remain devoted to him and continue to support him throughout these troubled times.

Goals of Sentence:

Virtually any sentence of incarceration can reflect the seriousness of the offense and promote respect for the law, as well as provide just punishment.

In the instant case a man who has devoted himself to public service (with a few ethical lapses in his last five (5) years of service) is going to jail. The court knows he will be incarcerated, he knows he will be incarcerated and everyone else knows too. For a person with this defendant's background even a month in jail would reflect the seriousness of this offense conduct – but then that sort of sentence would be wishful thinking.

The defendant knows and accepts that what he did was wrong, was "serious" and knows he must be punished. When factoring in the punishment aspect the court should consider the punishments already imposed; loss of his political and public life and persona; the loss of contact with "friends" that he once held close; despite their involvement in this conduct, the loss of three jobs; the suffering of public humiliation and ridicule; the media surrounding his home – scaring his children as they did so; mounting financial problems; the effect that an imminent jail sentence has had on his wife Karleen and his children. While all of these "things" may seem collateral or even inconsequential to some, John Celona has suffered punishment and will suffer more by this court's sentence as well. Lastly, as to punishment, this court should be mindful that he has been fined $130,000.00 by the Rhode Island Ethics Commission as a result of his admission to those charges.

Deterrence:

When discussing deterrence it is clear that "it" means not only deterrence for the defendant, but deterrence for others as well.

The defendant, by and through counsel, asserts without hesitation that this ordeal has had sufficient deterrence effect on him to last a lifetime. The defendant can only suggest that for other legislators to witness what he has gone through, must be a deterrent to them also. If it has not had such an effect on any of them, then nothing will.

Protect Public/Training:

No one can even suggest that John Celona is a "danger" to the community. While his actions between 1998 and 2003 may have caused some loss of public confidence in our state government, his dangerousness ends there.

He needs no educational or vocational training. In fact, Celona has most "recently" found employment in the mortgage industry and has been happy and satisfied with his new "career." He now only needs to begin – and finish the sentence imposed by this court so that he may finally be reunited with his family.

Conclusion:

This court has the authority, and discretion and obligation to impose a sentence that is "reasonable."

The defendant, John Celona, asks that this court consider all of the good and not just the offense conduct for which he is here, in determining what that sentence shall be.

JOHN CELONA
By his attorney,

*/s/ William C. Dimitri*
WILLIAM C. DIMITRI, ESQ. #3129
462 Broadway
Providence, RI 02909
Tel (401) 273-9092
Fax (401) 331-1898

**CERTIFICATE OF E-FILING**

I hereby certify that on the 26th day of January, 2007, I caused the Defendant's Sentencing Memorandum to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic Notification:

Gerard B. Sullivan, A.U.S.A.
U.S. Attorney's Office
50 Kennedy Plaza, 8th Fl.
Providence, RI 02903

*/s/ William C. Dimitri*