UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. No: 05-080T |
| | ) | |
| JOHN A. CELONA | ) | |

**GOVERNMENT'S MOTION FOR DOWNWARD DEPARTURE BASED ON SUBSTANTIAL ASSISTANCE TO AUTHORITIES**

## I. INTRODUCTION

The defendant, JOHN CELONA ("Celona") defrauded the citizens of the State of Rhode Island of his honest services as a State Senator and as Chairman of the Senate Corporations Committee. While holding those official positions from July, 1997 to December, 2003, Celona participated in three fraudulent schemes involving five corporations and a number of corporate executives. Celona unlawfully enriched himself by obtaining money and gifts while intentionally using his public authority and influence to benefit the corporations who were giving him pay-offs. He deceived the citizens of Rhode Island by not fully disclosing his financial relationships with the corporations. In exchange for his dishonest services, Celona received payments of approximately $319,203.63 as well as gifts of meals, entertainment, lodging, golf outings and travel.

Celona's treacherous conduct came to the attention of the Federal Bureau of Investigation ("FBI"). In the course of its preliminary investigation, the FBI contacted Celona. He soon agreed to cooperate with authorities. Celona has since provided substantial assistance to the

government in the investigation and prosecution of the corporations and executives that were paying him money to defraud the citizens of the State of Rhode Island. He is also cooperating in investigations of similar misconduct by other elected officials and the corporations who were paying them. Celona thereby qualifies for this departure request.

## II. ARGUMENT

Substantial assistance in the investigation and prosecution of another person who has committed an offense may justify a sentence below the guideline range and below any statutorily required minimum sentence. 18 U.S.C. § 3553(e), USSG §5K1.1, N.1. The Sentencing Guidelines provide a five factor analysis.[1] The United States will assess Celona's assistance

---

[1]§5K1.1 Substantial Assistance to Authorities (Policy Statement)

Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

(a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from this assistance;

(5) the timeliness of the defendant's assistance.

accordingly.

**A. The government's evaluation of the assistance rendered.**

Since he was first approached by FBI agents, Celona has been debriefed on numerous occasions. He has already testified seven times before a Federal Grand Jury investigating these matters, and, as the Court is aware, he has testified publicly in the trial of Robert Urciuoli, Frances Driscoll and Peter Sangermano (CR. No: 06-02T). Roger Williams Medical Center ("RWMC"), a Rhode Island non-profit corporation, was also originally charged in that indictment. Most recently, the same Grand Jury returned Indictments against two CVS executives, John Kramer and Carlos Ortiz for their roles in bribing Celona.

The investigative leads and the Grand Jury testimony provided by Celona were invaluable. His assistance advanced the investigations of those matters and facilitated the Grand Jury's understanding of the cases. To date, Celona continues to assist the government in other investigations relating to his own misconduct and the misconduct of other elected officials.

The cases against RWMC, Urciuoli, Driscoll, and Sangermano were based on solid corroborating evidence but still relied, in part, on Celona's testimony to achieve conviction. The government considered Celona's testimony to be necessary to the presentation of the trial. However, Celona's testimony was, at times, less than compelling. For example, under cross-examination he was frequently forgetful, sometimes evasive, and occasionally belligerent. Over the course of six days of testimony, he developed a combative style of responding to aggressive cross-examination. He had to overly rely on documents or recorded testimony in order to answer questions accurately.

Prior to trial, RWMC entered into a deferred prosecution agreement in which the corporation admitted criminal liability for the acts of Urciuoli and Driscoll. RWMC agreed to reform its business practices, cooperate with the government, and to provide $4,000,000.00 worth of free and uncompensated medical care to the community. Both Urciuoli and Driscoll were convicted after trial and await sentencing. Sangermano was acquitted.

The United States credits Celona for his assistance in achieving each of the convictions in the RWMC matter and the recent Indictments against CVS executives. It is anticipated that Celona will be asked to render future assistance involving more debriefings as well as providing additional testimony before the Federal Grand Jury and at any resulting trials. The United States has considered Celona's anticipated future assistance in arriving at a sentencing recommendation. Since that future assistance will be similar in nature and scope to the assistance already provided, the United States believes that the Court has sufficient information to fairly sentence Celona at this time.

**B. <u>The truthfulness, completeness and reliability of any information or testimony provided by the defendant</u>.**

Throughout his debriefings Celona provided largely truthful statements to investigators. Nevertheless, as he began to cooperate, he sometimes recalled events in such a way as to make it look better for himself. For example, Celona candidly admitted that he had changed his position on Pharmacy Freedom of Choice Legislation one month after accepting employment with CVS, a corporation that had a significant financial interest in that legislation. However, he initially tried to explain that he had changed his position, at least in part, because the proposed legislation had been amended to admit independent pharmacies. After investigators pointed out to him that the

proposed legislation had been amended, but only long after he changed his position, Celona admitted that he had lied to the FBI and that he changed his vote because he was being paid by a corporation that had a financial interest in that legislation. Overall, though, his preliminary accounts were largely accurate and were subsequently corroborated by further investigation, documentary evidence and the statements of other witness.

The United States is not aware of any instance in which Celona intentionally provided false testimony in Grand Jury. However, on at least one occasion, he was incorrect about an aspect of his testimony. In that incident, Celona testified that on a specific date, time, and place he telephoned the Ethics Commission from his cellular telephone to obtain a verbal approval to commence consulting work for CVS. A subsequent review of Celona's cellular telephone records established that his testimony was incorrect in that no call originating from his cell phone, on that date and at that time, was made to the Ethics Commission. Although the United States believes that Celona was merely mistaken, it is representative of the way in which Celona sometimes attempted to explain his own behavior.

Celona's trial testimony was accurate in all the many instances in which the United States had documentary evidence to corroborate his account. Under cross-examination Celona often could not, or would not, answer questions directly and without reference to documents. Just prior to trial, Celona also recovered memories not previously disclosed to investigators. While witnesses are certainly required to testify to their best recollection on the day they give testimony, at least some trial testimony, concerning when he first requested a job from Robert A. Urciuoli, contradicted prior statements and testimony.

In evaluating the truthfulness, completeness and reliability of the information and testimony provided by Celona, the government is cognizant of the fact that the offenses to which Celona plead guilty involve dishonesty. Indeed, Celona has admitted that he lied to his colleagues, his constituents, the Ethics Commission, the public and even to his accomplices. Celona lied to conceal his financial relationships with RWMC, CVS and a health insurance company to conceal his conflicts of interest from the public and to aggrandize the value of his dishonest services to his accomplices. Celona continued in that pattern of dishonesty when he was initially contacted by the FBI. Once Celona began truthfully cooperating, the United States believes that he did so to the best of his ability. Although a great deal of Celona's cross-examination involved demonstrating his dishonesty, it is important to recognize that, in context, much of that demonstrated dishonesty was endemic to the crime and not to his cooperation.

**C. <u>The nature and extent of the defendant's assistance.</u>**

As indicated, at each stage of the investigation, Celona has provided a corroborated account of the honest services frauds in which he participated. When approached by federal authorities he provided useful information that furthered the investigation. Celona testified before the grand jury and at trial. He was exhaustively cross-examined. His trial testimony alone spanned six days of trial.

Celona has not only provided assistance against the corporations and executives that were paying him, he has provided, and he is continuing to provide, assistance in the on-going investigations of other public officials and the businesses who may be paying them to render dishonest services to the public in schemes similar to the ones in which Celona participated. Celona is cooperating in the on-going investigations of a number of other public officials. He is

providing useful leads to the FBI that are actually assisting FBI agents who are in the process of conducting those investigations.

Thus far, Celona is credited with helping to secure the admission of wrongdoing by RWMC, its agreement to repay the public with 4 million dollars of free and uncompensated medical services, and the conviction after trial of the hospital's former President and Senior Vice-President. It is expected that Celona's cooperation will be substantially similar in the Kramer and Ortiz trial as well as in the remaining investigations.

**D. Any injuries suffered or any danger of risk of injury resulting from this assistance.**

Although white collar and political corruption investigations do not typically carry with them the risks of harm associated with more violent types of crime, Celona has suffered repercussions in connection with his cooperation in this case. Beyond the public ridicule and the personal attacks he has endured, Celona has reported some instances of harassing, if not threatening, conduct. Celona reports that he has received numerous hang-up telephone calls, almost daily, since he began cooperating in this investigation. Celona also claims he has received telephone and personal messages directly and indirectly condemning him for being a "rat." Celona twice reported that he found dead rodents, which he believes were purposefully left, on his doorstep. Celona has not suffered any physical injuries as a result of his cooperation, however cooperation with the government in a highly publicized trial always bears some risk of harm.

**E. Timeliness of the assistance rendered.**

On March 8, 2004, Celona's home was searched by state authorities. After the state search, the FBI contacted Celona to request his assistance. Celona agreed to give a statement to federal authorities subject to the conditions outlined in a proffer letter. That initial conversation occurred on or about August 2, 2004. Celona's statements and testimony have actually been used to successfully investigate, Indict, prosecute and convict other entities and individuals. Any delay between request and cooperation had no discernable effect on the cases. The government therefore assesses Celona's assistance as timely rendered.

## III. CONCLUSION

The United States moves for a downward departure because Celona was called upon to render assistance and he provided that in every instance. The United States fully anticipates that Celona will continue to assist in other political corruption trials and investigations. The United States recommends that Celona be awarded only a moderate departure because of his initial lack of candor with investigators and because the serious nature of his own misconduct seriously undermined public trust in state government which demands a correspondingly severe sentence, despite his substantial assistance.[2]

---

[2]Celona's sentencing guideline is currently computed at Level 19/Category I. Absent the assistance rendered, the United States would, at the very least, be recommending a sentence at the high end of this guideline range. However, based on Celona's substantial assistance, the United States recommends a 4 level departure. As the United States has informed the Court, there are other ways to compute Celona's guideline sentencing range that might cause the Court to determine that another guideline range is applicable at Celona's sentencing. If the Court determines that a different guideline level is applicable, the United States reserves its right to adjust the recommendation.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys

ROBERT CLARK CORRENTE
United States Attorney

/s/ GERARD B. SULLIVAN
GERARD B. SULLIVAN
Assistant U.S. Attorney

/s/ LUIS M. MATOS
LUIS M. MATOS
Chief, Criminal Division
Assistant U.S. Attorney

United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
gerard.sullivan@usdoj.gov
luis.matos@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of January, 2007, I caused the Government's Motion for Downward Departure Based on Substantial Assistance To Authorities to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

William C. DiMitri, Esq.
462 Broadway
Providence, RI 02909

/S/ GERARD B. SULLIVAN
GERARD B. SULLIVAN
ASSISTANT U.S. ATTORNEY