**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. No: 05-80T |
| | ) | |
| JOHN A. CELONA | ) | |

# THE GOVERNMENT'S RESPONSE TO THE DEFENDANT'S SENTENCING MEMORANDUM

## I. INTRODUCTION

On January 26, 2007 the defendant, John A. Celona ("Celona"), filed a sentencing memorandum in which he addresses the issue of how "loss" should be calculated for purposes of determining an appropriate guideline sentence. He further argues against any upward departure and makes an argument for an appropriate sentence in accordance with 18 U.S.C. § 3553 (a). The United States is not seeking a departure and will make a sentencing recommendation after the court determines the applicable guideline range in this case. However, the loss calculation and the interplay of that issue in this case with the related case of Robert A. Uciuoli ("Urciuoli") is a matter that needs to be addressed.

On October 25, 2006, the United States filed a Response to the Pre-Sentence Report ("PSR"). In that response, the United States alerted the Probation Department and the Court to computational issues that might effect the guideline calculations in this case. Those computational issues relate to the calculation of "loss" or "gain" to determine the applicable guideline. The United States files this response to the defendant's Sentencing Memorandum to address those issues and to provide the Court with the best information currently available

concerning the gain to the corporations which were paying Celona for his dishonest services.

## II. DISCUSSION

The United States Sentencing Guideline applicable to the offense of conviction is Section 2C1.7. The Court is directed to calculate the, "loss to the government, or the value of anything obtained or to be obtained by a public official or others acting with a public official, whichever is greater."

In this case, loss to the government cannot be determined. The gain to Celona was approximately $319,203.63. That is the amount stipulated to in his Plea Agreement. However, the guideline directs the Court to use the, "value of anything obtained or to be obtained by a public official ***or others working with a public official whichever is greater***." The value of the gain to the corporations, whose executives were paying Celona, was far greater than the sums of money paid to Celona. Celona only intended to obtain the money paid to him without regard for the benefit to the corporations nor for his duty to the public. There is scant evidence to suggest that he knew of or appreciated the value of his dishonest services to the corporations. Nevertheless, the guidelines clearly direct the Court to apply the greater of the value of that which was obtained by Celona or by those working with him if that amount can be reasonably determined.

Celona pled guilty to an Information charging him with three separate schemes to defraud the public of his honest services. The first scheme involved Roger Williams Medical Center and two of its executives, including Urciuoli. Celona performed a number of dishonest services for Roger Williams which financially benefitted the hospital or its affiliates. However, it is difficult to assign a value to those benefits. In one instance Urciuoli used Celona to strong arm higher

reimbursement rates from Blue Cross resulting in an additional $5.6 million dollars paid to the hospital. In Urciuoli's case, the guideline range is properly calculated based on the $5.6 million dollar figure.

In the other two schemes, which involve CVS and Blue Cross, the only readily detrminable benefit to those corporations is the value of the financial impact that the corporations assigned to the efforts to defeat Any Willing Provider or Pharmacy Freedom of Choice legislation. Documents obtained from Blue Cross contain a projected 3-year loss figure of $23.6 million dollars if Freedom of Choice legislation were to pass.[1] Just last month, the Chief Financial Officer for CVS opined that he could only determine that this legislation would have had a "moderate financial impact" on CVS. When asked to further define a "moderate" impact, he characterized a moderate impact as ranging between $2 million and $10 million dollars. Other documents, referenced in the Indictment of CVS executives John Kramer and Carlos Ortiz, make generalized references to saving CVS millions of dollars based on their efforts to defeat this legislation.

Adding the $5.6 million dollars from the Roger Williams scheme to the $23.6 million dollar estimate from the Blue Cross scheme and the lowest estimated value from CVS totals $31.2 million dollars. If the Court aggregates the value to be obtained by each entity it would put Celona in the § 2B1.1(b)(1)(L) range of more than $20 million dollars and less than $50 million

[1]The documents, an exchange of electronic mail between Blue Cross executives under the subject heading, "Approximate Impact of Any Willing Provider Legislation on Rx," contain another estimate of $ 4.7 million dollars for calendar year 2004. The documents also reference an estimate of the financial impact on Blue Cross that was calculated by Pharmacare at $25-30 million dollars. Pharmacare is a pharmacy benefits provider for Blue Cross that is a wholly owned subsidiary of CVS.

dollars. Under this computational scheme, which is the method used to calculate the offense level of his co-conspirator, Urciuoli, Celona's base offense level of 10 would be adjusted upwards by 22 levels resulting in an adjusted offense level of 32. That offense level, further adjusted for acceptance of responsibility, produces a total offense level of 29. With a criminal history category of I, Celona's sentencing range would be 87 to 108 months of imprisonment, under this alternative calculation.

The simple fact remains that different calculations were employed to determine the guideline offense levels for Celona and Urciuoli which produce different results. Celona's PSR utilized the value of the payments he received. Urciuoli's PSR uses the value of benefit to the corporation.[2]

At the time that Celona agreed to plead guilty and cooperate in this investigation, the only information available on the value of the loss or gain from this crime was the evidence of the amount of the payments made to Celona. Those are the numbers that are stipulated to in his plea agreement. The stipulation is only to that factual information not to which guideline range should apply. Celona and the United States specifically agreed to leave that determination to the Court. Through continued investigation, the United States now has some limited information on the estimated value of Celona's crime to the corporations that benefitted from his dishonest services. That information has been provided to the Probation Department and was incorporated into Urciuoli's guideline computation.

---

[2]Celona's PSR, with an adjustment for acceptance of responsibility, places him at Level 19/Category I with a range of 30-37 months imprisonment. Urciuoli's PSR places him at Level 28/Category I with a range of 78-97 months. Urciouli was not awarded a reduction for acceptance of responsibility because he was convicted after trial. Even adjusting for that difference, there remains a 6 level disparity.

## III. CONCLUSION

In Celona's case, the United States is obligated to make a Substantial Assistance Departure request from whichever guideline the court determines is applicable at sentencing and will do so consistently with the Motion for a Downward Departure separately filed with the court.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ GERARD B. SULLIVAN
GERARD B. SULLIVAN
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
gerard.sullivan@usdoj.gov

**CERTIFICATE OF E-SERVICE**

I hereby certify that on this 29th day of January, 2007, I caused the Government's Response to Defendant Celona's Sentencing Memorandum to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

William C. DiMitri, Esq.
462 Broadway
Providence, RI 02909

/S/ GERARD B. SULLIVAN
GERARD B. SULLIVAN
ASSISTANT U.S. ATTORNEY